## ELLIOTT V. MAYFIELD AND WIFE.

1. The record contained an order of publication, by the Orphans' Court, requiring the executor to settle, on a day designated, the accounts of his testator's estate. On the day appointed, a decree was rendered, reciting that a final settlement was made, and ordered to be recorded. The decree, after adjudging that certain sums were due to the different legatees, concludes thus: "All the above specified legacies to be paid according to the terms and conditions of the last will of said deceased, with interest from this date, to be subject to such payments as may have heretofore been made, with interest thereon from the time they were made." *Held*, that the decree was final, especially as the will did not require any thing to be done to entitle the legatees to receive their portions; and that an execution might issue under the statute, in favor of each legatee, for the amount respectively adjudged him, or her.

2. Where there are several legatees and several executors, a decree by the Orphans' Court, in favor of one or more of the legatees, against one of the executors, and in favor of other legatees against the other, even if it be irregular, is not *void*; and an execution may thereon issue.

3. The action of account, or other appropriate action at law, though given by statute, does not exclude any other statute remedy for the recovery of legacies.

4. In the execution of a will, questions may arise, which the Orphans' Court is incompetent to determine; and where a trust technically so called, is required to be enforced, a Court of Equity must be resorted to.

5. Although a *scire facias* may not have lain at common law, to revive a judgment in a personal action, where no execution had issued thereon within a year and day after its rendition, yet the long continued practice in this State, of thus reviving such judgments, before our statute upon this subject, tacitly modified the common law.

6. Upon the return of an original *scire facias*, "not found," an order was made for the issuance of an *alias sci. fa.*; and thereupon, a writ issued in form an original, with the words "*alias sci. fa.*" written at its head—*Held*, that it might be regarded as an *alias writ*; and that the defect was one of form, amendable (under the statute) on motion.

7. A *scire facias* to revive a decree of the Orphans' Court, called upon the defendant to show cause, why the decree should not be revived, &c. it was adjudged that the plaintiffs have execution of the decree, &c.—*Held*, that the order or decree upon the *scire facias* was unobjectionable.

THIS was a proceeding by *scire facias*, in the Orphans' Court of Tuskaloosa, to revive an order or decree rendered by that Court against the plaintiff in error, as one of the executors of John Spencer, sen'r, deceased.

It appears from the record, that the plaintiff duly qualified as one of the executors of the testator, in January 1827, and that on the 29th November, 1830, an order was made as follows, viz: "It is ordered by the Court, that publication be made

once every two weeks for forty days, in some newspaper print-
ed in the town of Tuskaloosa, that the executors of the last
will of John Spencer, dec'd. will be required to settle finally,
their accounts with the estate of said deceased, on the four-
teenth day of January next."

On the fourteenth day of January, 1831, the following entry
was made : " This day the Court proceeded to settle, finally, the
estate of John Spencer, sen'r, dec'd, with the executors there-
of, which was accordingly done, and ordered to be recorded."

Then follows *in extenso*, the decree of the Orphans' Court,
declaring the sum which each of the executors had in his hands,
and directing the payment of the same to the legatees, *several-
ly*. So much of the decree as it is material to notice, orders the
plaintiff in error to pay " to Louisa Spencer, daughter of said
Zilman Spencer," (whose name is previously mentioned as a
son of the testator) " seven hundred and eleven dollars and
ninety-seven cents." The decree then, concludes as follows :
" All the above specified legacies, to be paid according to the
terms and conditions of the last will of said deceased, with in-
terest from this date, to be subject to such payments as may
have heretofore been made, with interest thereon, from the
time they were made."

On the 7th May, 1838, a writ of *scire facias* was issued, re-
citing the decree, and stating the marriage of Louisa Spencer
with Isaac N. Mayfield, since the same was rendered, and
calling upon the plaintiff in error to show cause why the de-
cree should not be revived, and Louisa and husband have exe-
cution thereon. The *scire facias* is indorsed as follows : " Re-
ceived 23d May, 1838, Ja's G. Blount, sheriff. By A. Lacy,
D. S. Not made known, the said Edward B. Elliott, not to be
found in my county. James G. Blount, sheriff. By A. Lacy,
D. S." And on the fourth of June, the day of its return, an
*alias scire facias* was ordered to issue, returnable on the first
Monday of July thereafter. In obedience to this order, *scire
facias* issued without any reference in the body of it, to that
which had previously issued, but these words, viz : " *alias
sci. fa.*" appear to have been written on the same page, and
immediately precede the writ. This second *scire facias* is
regularly returned, '· not made known, &c."

On the first Monday in July, 1838, the Orphans' Court made

an order reciting the decree, and the return of the two writs of *scire facias,* which concludes as follows: "And it further appearing to the satisfaction of this Court, that at the time of rendering said decree, the said Louisa was a feme sole; and it further appearing, that afterwards, to wit, on the —— day of ——, one thousand eight hundred and thirty-two, the said Louisa Spencer intermarried with the said Isaac N. Mayfield; and it further appearing to the satisfaction of this Court, that the sum of money in said decree, still remains unpaid and unsatisfied, and that the said decree still is in full force, unreversed, or in anywise set aside; and that the said Louisa Spencer, before her marriage with the said Isaac N. Mayfield had not execution upon said decree, nor have the said Isaac N. Mayfield and Louisa, his wife, had execetion of, or upon said decree, since their intermarriage as aforesaid. It is therefore ordered, adjudged and decreed, that the said Isaac N. Mayfield and Louisa, his wife, have their execution against the said Edward B. Elliott, executor, &c. as aforesaid, for the amount of the said decree, according to the force, form and effect of the said decree." And that they recover their costs, &c.

To revise this order for the revival of the decree, the defendant below has prosecuted a writ of error to this Court.

CRABB & COCHRAN. for the plaintiff in error, insisted: First, The decree of January, 1831, is *interlocutory,* and on it no execution could have issued in favor of Louisa Spencer. Cherry & Bell v. Belcher, 5 Stewt. & P. Rep. 133; Judge of Limestone Co. Court v. Coalter, 3 Stewt. & P. Rep. 348; Judge of Madison Co. Court v. Looney, 2 Stewt. & P. Rep. 70; Moore v. Chapman, 2 Stewt. Rep. 466.

2. The decree was extra-judicial, and consequently void; because it is against one executor, while two were acting; and because the law gives to a legatee another, and different remedy. Aik. Dig. Sec. 29, p. 183; 2 Stewt. & P. Rep. 72; 5 Stewt. & P. Rep. 397; Clark v. Herring, 5 Binn. Rep. 33; Wilson v. Long; 12 Sergt. & R. Rep. 58; Toller on Ex'rs. 495; Aik. Dig. Sec's. 37–8–9, p. 252. And the proceeding being to enforce the execution of a trust, the Orphans' Court had no jurisdiction. Wyman v. Hubbard, 13 Mass. Rep. 232; Creagh v. Portis, 4 Porter's Rep. 333; Williams on Ex'rs. 1186, 1268.

3. At common law, a *scire facias* did not lie to revive judgments in personal actions, but was given by the Stat. Westm. 2 chap. 45; 6 Com. Dig. 520; 2 Sel. Prac. 189; 2 Dunl. Prac. 1083; 2 Tidd's Prac. 1153. And no statute of this State extends the remedy to decrees of Orphans' Courts. Aik. Dig. 52, 156, 159, 273, 280.

4. The proceedings themselves are irregular. The first *sci. fa.* was returned on the 23d May, the day on which it was received by the sheriff. An order was made that an *alias sci. fa.* issue, yet the second writ purports to be an original.

5. The order made upon the *scire facias,* is erroneous, in giving to the defendant in error, execution upon the decree, instead of directing that the same be revived. The order should have stated for what sum execution should issue, and that sum ought to have been the amount of the decree, without the interest thereon, since its rendition. Aik. Dig. sec. 37, p. 252.

PECK & CLARK, for the defendants, contended,

1. The decree of January, 1831, was not only regular, but that it was final, and authorised the issuance of an execution thereupon. Whiting *et al.* v. Bank U. S. 13 Peters' Rep. 6.

2. However limited may have been the remedy by *scire facias* at common law, there can be no doubt, but it is the appropriate remedy to revive a decree of an Orphans' Court.— Aik. Dig. 252.

3. An inspection of the record will sufficiently show that the proceedings were regular, and the order of revival in conformity to law. As to any irregularity in the decree, if it be not absolutely void, it will not be noticed in a proceeding to revive.

COLLIER, C. J.—1. Judgments are either *interlocutory* or *final.* *Interlocutory* judgments are such as are given in the progress of a cause upon some plea, proceeding, or default, which is only intermediate, and does not finally determine or complete the suit; but contemplates further proceedings for that purpose. 2 Tomlyn's Law Dic. 287; Bing. on Judgment, 2, 13, L. Lib; 3 Bla. Com. 396. *Final* judgments are such as at once finish the proceedings, by declaring that the plaintiff either has, or has not entitled himself to the redress he sought, and by ascertaining what amount he shall recover.— Bing. on Judgment, 2; 3 Bla. Com. 398; 2 Tomlyn's Law

Dic. 288. Decrees are also either *interlocutory* or *final*, and their character is to be ascertained by an application of the tests we have laid down. Bouv. L. Dic. 295.

In Whiting, *et al.* v. Bank of U. S. 13 Pet. Rep. 6, a decree was rendered, foreclosing the equity of redemption of the mortgagor to the mortgaged premises, directing a sale, and a report thereof to be made to the Court by the master. It was held that that was a *final* decree, and might be appealed from ; the sale and report being considered only the execution of the decree. And in Weatherford, *et al.* v. James, 2 Ala. Rep. N. S. 170, it was adjudged that a decree which settled the rights of the parties by declaring that the complainant was entitled to such an estate as one of the defendants could convey ; directing partition to be made between the defendants—requiring the master to compute the amount of damages, if any, which had been paid by the complainant on a judgment at law, and ascertain other facts, was *final*.

The cases cited to this point, by the plaintiff's counsel, with the exception of Cherry and Bell v. Belcher, 5 Stewt. & .P. Rep. 133, do not seem to be at all pertinent. With the exception stated, they were cases of suits on administration bonds, alleging breaches that occurred previous to 1830, but do not determine what is, or is not a final decree.

Cherry & Bell v. Belcher, was a suit in equity, by which the complainant, in right of his wife, as distributee, sought to recover one fourth of a sum of money, which the Orphans' Court ascertained to be due on settlement, by the administrators to the estate of their intestate. It was insisted that chancery had no jurisdiction of the case, or if it had, the settlement was not conclusive of the amount of the administrators indebtedness.— The Court said, "whatever might be the effect of a distinct and final order of distribution made by the County Court, awarding to each distributee, the amount of his distributive part, a mere ascertainment of the sum remaining in the hands of the representatives, even if the settlement were .certainly a final one, cannot divest chancery of its jurisdiction, when applied to, by one of the distributees, to compel payment of the portion to which he is entitled." Again : "But the settlement relied upon in this case, seems to contemplate something further to be done. It does not purport to be final, but declares,

that nine hundred and twenty-six dollars and eighty-three cents, were then in the hands of the administrators, subject to distribution." This being the case, the Court thought that the administrators might in equity and good conscience, be permitted to show " a mistake in the settlement, subsequent liabilties, payments to the complainant after, or to his wife, before their marriage, &c." There can be no doubt, but what took place in the Orphans' Court, was nothing more than an ascertainment of the amount in the administrator's hands, belonging to the estate of their intestate, and that, that amount might be increased or diminished by evidence of a mistake, &c. But the case before us, is entirely unlike the one cited. Here, the first step preparatory to a settlement, is, the publication of an order, that the executors "will be required to settle, finally, their accounts with the estate of said deceased," &c. And on the day designated in the order, it appears, that " the Court proceeded to settle, finally, the estate of John Spencer, sen'r. deceased, with the executors," that the settlement was made, and that the decree in the record, is that settlement.

But it is objected, that the decree is not final, because it directs the sums adjudged to the several legatees, to be paid according to the terms and conditions of the will of the testator; and to be subject to such payments as may have been previously made, upon account of the respective legacies. The wife of the defendant in error, is made a beneficiary of the testator, by two clauses of his will. By the first, he bequeaths one thousand dollars to herself, her brother and sister, " to be equally divided between them, as they become of age, or marry:" by the last, he bequeaths to them one eighth part of the proceeds of his estate, not specially bequeathed, "to be equally divided between them." There is nothing to show that the defendant's wife was not. entitled to receive both legacies at the time the decree was rendered. She may have been twenty-one years of age, if so, she was entitled to the first; and to the last, no condition is annexed. So that the reference to the will can have no influence in determining the character of the decree.

In declaring that the legacies shall " be subject to such payments as shall have been heretofore made," the Court have not evinced an intention that the decree shall be *interlocutory.* In

addition to the positive declaration, that the settlement is *final*, specific sums are determined to be due, and adjudged to be paid to the legatees. The decree then, is not an intermediate sentence, but is the conclusion of the matter, and contemplates no farther proceeding in order to its consummation. The Orphans' Court had fully exercised its jurisdiction, and could not allow any previous payments for the purpose of reducing the sums adjudged to the legatees, so long as the decree remained in force. The reservation to the executors, of the right to avail themselves of such payments, was most probably introduced upon a suggestion, that the legatees, or some of them, had received a part of their legacies, which the executors were unprepared to show. Be this as it may, the entire proceeding indicates, that no subsequent inquiry in the Orphans' Court was intended, with a view to reduce the sum ascertained by the decree to be due to any legatee.

Suppose a Court should render a judgment for a specific sum, in usual form, and at the conclusion add, that it was subject to such payments as were made pending the suit, or previously; such a judgment would doubtless be definitive, so far as it respected the action of the Court of law. Yet it would be competent for a Court of Equity to allow to the defendant all sums which he could show had been paid. So, in the case before us, the decree is a final disposition of the matter in the Orphans' Court, but chancery would entertain a bill, alleging, that payments had been made upon the legacies, previous to its rendition.

Lewis v. Smith, 2 Serg't. & R. Rep. 142, was an action on the case for money had and received, &c. against the defendant, as Marshal for the district of Pennsylvania, to recover the proceeds of the sale of certain goods taken in execution, and sold by the defendant, by virtue of, or under color of a *fi. fa.* issued from the Circuit Court of the United States at the suit of Escaralte against Fitzsimmons. Judgment was confessed by Fitzsimmons, with a stay of execution for sixty days. The judgment was entered on the docket, *generally*, without stating for what sum. Among other grounds of defence, it was insisted, that the judgment was merely *interlocutory*, and did not authorise the issuance of an execution. The Court held, that the judgment was *final*, "because sixty days stay of exe-

cution is given, which is never done on an interlocutory judgment." And great stress is laid upon what seems to have been the intention and understanding of the parties.

In the present case, the record is quite as strong to show, that the decree is final; for the order of publication asserts such a settlement to be intended; and the Court in rendering the decree, declares that it is final.

Having ascertained that the decree is final, we now proceed to inquire whether Louisa Spencer, previous to her marriage, was entitled to an execution thereon. By the act of 1830, " to extend the powers of the County and Orphans' Court in certain cases, and for other purposes," it is enacted,

1. " All decrees made by the Orphans' Court on final settlements, on the accounts of executors, administrators, and guardians, shall have the force and effect of judgments at law, and executions may issue thereon, for the collection of the several distributive amounts against such executor, administrator, or guardian.

2. " When distribution of real or personal estate is decreed by the said Court, each distributee, heir, or devisee, may and shall have his or her writ of execution, or attachment, one or both, in the case of personal estate; and in the case of real estate, a writ of *habere facias possessionem*, against the executor, administrator, or guardian, and the sheriff to whom such writ shall be directed, shall execute the same according to the commands thereof."

This statute is exceedingly explicit. It declares the effect of decrees made on final settlements to be equivalent to judgments at law, and that each distributee, heir, or devisee, may have his, or her execution for the collection of the several distributive amounts. It seems too clear to require illustration, that Louisa Spencer was entitled to an execution on the decree, in her favor, since it is in all respects, such as the act contemplates.

2. It is not objected to the decree, that it was made by a Court having no jurisdiction of the subject matter; but it is insisted the jurisdiction was improperly exercised, in rendering several decrees against each of the executors. After ascertaining the amount of assets in the hands of the executors respectively, subject to distribution, the Court proceed to render

its decree against one of the executors in favor of some of the legatees, and against the other in favor of the remaining legatees. Without stopping to inquire whether this is irregular, or if so, whether the executors (who cannot be prejudiced) may avail themselves of it on error, we are satisfied that it does not make the decree *void.* If it be voidable, it should have been set aside by a direct proceeding, and cannot be collaterally impeached on a *scire facias* to revive.

But it is insisted, that as an action of account, or other appropriate action at law, is given to legatees for the recovery of their legacies, that remedy should have been adopted. Aik. Dig. 183. True, such a remedy is provided, yet it does not exclude any other which may be afforded by statute. The act of 1812, " concerning the distribution of intestates estates," as amended by the act of January, 1833, authorises a distributee or legatee, at any time after the expiration of eighteen months from the grant of letters of administration, &c. to petition the Orphans' Court for an assignment of his distributive share or legacy, and the County Court is authorised to take measures to cause the same to be done. Aik. Dig. 155; Leavens v. Butler and Wife, 8 Porter's Rep. 392. This statute taken in connection with that of 1830, already cited, clearly shows, that the Orphans' Court, on a final settlement of the accounts of an executor or administrator, may dispose, by its decree, of all the assets in hand, and award to each distributee or legatee, his proper portion.

There are doubtless questions, which sometimes arise in the execution of the will, that the Orphans' Court is incompetent to determine, and where these relate to trusts technically so called, a Court of Equity must be resorted to, for relief. But what we have said in regard to the form of the bequests, and the powers of the Orphans' Court, will sufficiently show, that the present case is one in which it can administer complete redress.

In Blackwell's ex'rs v. Meneese, 5 Stewart and Porter's Rep. 400, the Court said, there was no law prior to 1832, which authorised the Orphans' Court, upon the final settlement of an estate, to insert in its decree, the amount of each distributive share or legacy ; prior to that year, by the act of 1830, all decrees, upon final settlements, were to have the force and effect of judgments, and executions allowed to issue thereon for the col-

lection of the distributive amounts, yet not even a distributive share of the balance found in the hands of the executors, could have been adjudged, much less a legacy given by the will. If it were necessary to a decision of this case, we should be inclined to think that the act of 1830, effected what the Court attributed to the act of 1832, and that the latter statute was thus far supererogatory. But supposing that the case cited upon the point we are considering, contains a just exposition of the law, the decree at most, would be reversible, but not absolutely void, so as not to authorise the issuance of an execution.

3. It is conceded, that at common law, a *scire facias* did not lie to revive a judgment in a personal action where a year and a day had elapsed after the rendition of the judgment, and before the issuance of an execution. Such at least seems to be the weight of authority. But the statute of Westm. 2d Edw. 1, chap. 45, gives a *scire facias* in such a case. This rule of the common law, it is said, was for the protection of the debtor, and was founded on the presumption, that the judgment was released or satisfied, after the lapse of such a period, without an execution having issued. Pennock and another v. Hart and another, 8 Serg't & R. Rep. 376 ; 6 Dane's Ab. 464 ; 2 Reeves Eng. Law, 189; 6 Bac. Ab. 104.

Though a *scire facias* was not the appropriate remedy previous to the passage of the statute cited, to revive a judgment in a personal action, where no execution had issued for a year and a day, yet it does not follow, that it would lie in no case upon a judgment in such an action. The reason of the rule leads to a different conclusion. It is a writ that issues in many cases, and is not at all confined to any particular branch of the law, but is in use in many parts of judicial proceedings. 6 Dane's Ab. 462. It is deemed a judicial writ, and founded on some matter of record, as judgments, &c. to enforce the execution of them, or to vacate or set them aside. But in many cases, a *scire facias* is granted, partly upon the record, and partly upon a suggestion, without which no proceeding could be had on the record ; 6 Bacon's Ab. 102. Thus, if a *feme sole* obtain judgment, and marry, her husband and self may sue out a *scire facias,* calling upon the defendant, to show cause, why they should not have execution. 6 Dane's Ab. 467–8 ; 6 Bacon's Ab. 116.

By a statute of this State, the plaintiff is entitled to his *scire facias* on *any* judgment where no execution has been issued for a year and a day;Aik. Dig. 621, 2d ed. This act was passed, professedly with a view to remove all doubts on the subject, and it may well be questioned, whether it introduced a new rule ; for it had been the practice for a long time previously, to revive judgments, which had abated, or become otherwise inoperative, by *scire facias*. And even if were clear that such was not the proper mode at common law, by which a husband was to obtain execution of a judgment recovered by his wife, while *sole*, we should hold, that in this respect, the common law rule was changed, by the long continued use of the *scire facias* in such a case. The more especially as no rights would be thereby affected. And this being the remedy for the revival of a judgment, there can be no question, but it is applicable to the decree of an Orphans' Court which we have seen, is declared by statute to have the force and effect of a judgment.

4. The plaintiff's counsel is mistaken in supposing, that it appears from the record, the first writ of *scire facias*, was returned by the sheriff, on the day it was received, and some eight or ten days previous to the time it was returnable. The indorsement of the sheriff shows the day of its receipt, but the return is not dated ; and we must therefore intend it to be regular.

If essential to the regularity of the proceedings, that the second *scire facias* should be an *alias writ*, we think the words, " *alias sci fa,*" written at the head of the process, taken in connection with the order of Court, that preceded it, sufficiently show that such was its character. *Besides,* the objection goes to a defect of form, which was amendable on motion, and does not warrant a reversal of the decree. Aik. Dig. 265–6.

5. The order or decree, rendered on the *scire facias*, is unobjectionable. The usual requisition made by the *scire facias* upon the defendant, is to *show cause*, why the plaintiff should not have execution of the judgment; in the present case, the defendant is required to *show cause* why the decree should not be revived, &c., and the plaintiffs have execution thereon. The gist of the matter is, execution upon the decree; this being accorded by the Court, the decree was *ipso facto*, revived in due form.

Other objections were taken by the plaintiffs counsel, to the decree, and previous proceedings of the Orphans' Court, but as they do not regularly present themselves in the case before us: we decline considering them. It remains but to add, that the order of the Orphans' Court, is affirmed.